United States District Court
Southern District of Texas
**ENTERED**
September 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM FIFER JACKSON-BOULET, § <br> (Inmate # 2988699) § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> OFFICER A. ALFARO, *et al.*, § <br> § <br> Defendants. § | CIVIL ACTION NO. H-20-2584 |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Fifer Jackson-Boulet, representing himself and proceeding without prepaying the filing fee, filed a civil rights action under 42 U.S.C. § 1983 against City of Houston Police Officers O. McNeilly and Moises Alfaro[1] and Harris County Sheriff's Officer Sheldon Curtis based on allegations of two separate assaults. (Docket Entry No. 1). At the court's request, Jackson-Boulet filed a more definite statement of his claims. (Docket Entry No. 7). After screening the pleadings under 28 U.S.C. § 1915A, the court dismissed Jackson-Boulet's claims against Officers McNeilly and Alfaro and ordered Officer Curtis to answer the complaint. (Docket Entry Nos. 8, 31). Officer Curtis answered the complaint and then filed a motion for summary judgment, supported by several exhibits. (Docket Entry Nos. 33, 36). Jackson-Boulet timely responded to the motion. (Docket Entry No. 41). Having reviewed the pleadings, the motion and response, the summary judgment evidence, and the applicable law, the court grants Officer Curtis's

---

[1] In his complaint, Jackson-Boulet identified Officer Alfaro as Officer "A. Alfaro." (Docket Entry No. 1). Subsequent investigation determined that the officer involved is Officer Moises Alfaro. (Docket Entry No. 24).

motion for summary judgment and dismisses this action with prejudice. The reasons for this ruling are explained below.

## I. Background

Jackson-Boulet is a pretrial detainee in the Harris County Jail. He alleges that on November 27, 2019, Officer Curtis assaulted him while he was in the sixth-floor dayroom. (Docket Entry No. 7, p. 3). Jackson-Boulet's complaint does not allege what started the incident, but he asserts that Officer Curtis punched and kicked him multiple times while he was handcuffed and that he suffered bruises and cuts as a result. (*Id.* at 3-4). After the incident, Jackson-Boulet was taken to the Jail medical clinic, where he was examined, referred for X-rays, and prescribed ibuprofen. (*Id.* at 4). Photos show that Jackson-Boulet sustained bruising on one arm and a swollen knee in the incident. (Docket Entry No. 36-3, pp. 5-6). The photos also show that Officer Curtis split his lip during the incident. (*Id.* at 4).

Jackson-Boulet filed a grievance with the Jail about the incident, which contains a more detailed statement of the facts. (Docket Entry No. 36-5, p. 38). In his grievance, Jackson-Boulet states that he was standing at the dayroom door when Officer Curtis arrived with the medication nurse. (*Id.*). When Jackson-Boulet put his hand through the tray slot in the door to retrieve his medications, Officer Curtis ordered him to step away from the door and put on pants. (*Id.* at 37-38). When Jackson-Boulet did not immediately comply, Officer Curtis grabbed Jackson-Boulet's arm. (*Id.*). Jackson-Boulet told Officer Curtis that he was wearing pants and asked Officer Curtis to "let my arm go." (*Id.* at 38). Instead, Officer Curtis "closed my arm in the slot and tried to break my left arm." (*Id.* at 37). Other officers responded to the scene. (*Id.*). After Jackson-Boulet was handcuffed, "that's when Officer Curtis and his back up attacked me." (*Id.*). They threw

Jackson-Boulet to the ground and punched and kicked him in the ribs. (*Id.*). They also put fingertip pressure behind his ears. (*Id.*).

Officer Curtis also prepared a report concerning the incident. (*Id.* at 40). In it, he states that he was escorting the medication nurse on the sixth floor when Jackson-Boulet came to the dayroom door and appeared to not be wearing pants. (*Id.*). Officer Curtis ordered Jackson-Boulet to step away from the door and put on pants. (*Id.*). Jackson-Boulet refused, stating that he did not have to obey Officer Curtis. (*Id.*). Officer Curtis told Jackson-Boulet that he would have to be fully dressed before coming to the door, and Jackson-Boulet again refused to step back from the door. (*Id.*). When Officer Curtis attempted to close the tray slot in the door, Jackson-Boulet thrust his arm through the slot as if to strike Officer Curtis. (*Id.*) Officer Curtis grabbed Jackson-Boulet's arm and called for back-up officers. (*Id.*). Once the back-up officers arrived, they opened the door and attempted to handcuff Jackson-Boulet. (*Id.*) Jackson-Boulet struggled and fought back, kicking and punching some of the officers. (*Id.*). Officer Curtis ordered Jackson-Boulet to stop resisting and struck him with his closed fist four times. (*Id.*). When Jackson-Boulet continued to struggle and kick, Officer Curtis again ordered him to stop resisting, but Jackson-Boulet ignored the order. (*Id.*). Instead, Jackson-Boulet swung at Officer Curtis, hitting him in the face with his closed fist. (*Id.*). Despite multiple orders from multiple officers, Jackson-Boulet continued to resist the officers. (*Id.*). Officer Curtis then struck Jackson-Boulet five more times in the torso. (*Id.*). Shortly thereafter, the officers gained control of Jackson-Boulet, secured him in handcuffs, and escorted him out of the dayroom. (*Id.*). Statements from Detention Officer Nymann, Detention Officer Phan, Detention Officer Simonds, Detention Officer Byrd, and Detention Officer Leamon generally confirm the events as related by Officer Curtis. (*Id.* at 42-43).

A portion of the incident was captured on video and submitted as summary judgment evidence. (Docket Entry No. 36-9). That video starts when Officer Curtis and the medication nurse arrive at the dayroom door at 8:40 a.m. (*Id.* at 8:40:04). The video does not contain audio, but it is clear that Officer Curtis is speaking with someone in the dayroom through the tray slot. (*Id.*). After a short time, Jackson-Boulet thrusts his arm through the tray slot toward Officer Curtis. (*Id.* at 8:40:41). Officer Curtis first attempts to push Jackson-Boulet's arm back through the tray slot. (*Id.*). When Jackson-Boulet resists, Officer Curtis secures Jackson-Boulet's arm and places a call on his radio. (*Id.*). Additional officers soon arrive and open the door to the dayroom, and a struggle occurs in the doorway. (*Id.* at 8:41:31-8:42:00). Three officers try to secure Jackson-Boulet as he struggles against them, punching and kicking at the officers. (*Id.* at 8:42:05-8:42:18). When Jackson-Boulet begins kicking, Officer Curtis punches Jackson-Boulet three times. (*Id.* at 8:42:19-8:42:22). Despite this, Jackson-Boulet continues to kick at the officers. (*Id.* at 8:42:27). After a short struggle, the officers are able to push Jackson-Boulet back into the dayroom and the door closes. (*Id.* at 8:42:34). There is no video footage from inside the dayroom. A few minutes later, officers carry Jackson-Boulet from the dayroom in handcuffs and shackles. (*Id.* at 8:45:14).

The use-of-force investigation report contains a statement from Harris County Jail inmate Devon Amos, who was present at the time of the incident. (Docket Entry No. 36-8, p. 18). He writes that the entire incident was unnecessary because Jackson-Boulet was wearing pants. (*Id.*). He also notes that the incident was "blown up." (*Id.*). He does not relate any other facts about the incident itself.

Jackson-Boulet alleges that Officer Curtis used excessive force during the November 27 incident, resulting in cuts and bruises to Jackson-Boulet's arm and leg. (Docket Entry No. 1, p.

5). He seeks monetary damages for the injuries he allegedly suffered, including punitive damages based on Officer Curtis's actions. (*Id.*).

In his motion for summary judgment, Officer Curtis contends that Jackson-Boulet's action should be dismissed because he did not exhaust his available administrative remedies before filing his complaint. (Docket Entry No. 36, pp. 15-17). Officer Curtis also contends that he did not use excessive force during the incident and is entitled to qualified immunity. (*Id.* at 17-26).

Jackson-Boulet responds that he attempted to exhaust his administrative remedies and that he believes that his grievance is still sitting unprocessed with the Internal Affairs Division. (Docket Entry No. 41, pp. 1-3). He also asserts that he was told that his grievance appeal was "automatically denied" because of his pending criminal assault charge. (*Id.* at 3). Jackson-Boulet further asserts that the video shows that he was wearing pants at the start of the altercation, proving that the entire incident was unnecessary. (*Id.* at 9).

## II.     The Legal Standards

### A.     Actions Under 42 U.S.C. § 1983

Jackson-Boulet brings his claims against Officer Curtis under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).

### B. Summary Judgment

Officer Curtis has filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

The court considering a motion for summary judgment must view all evidence and draw all inferences "in the light most favorable to the opposing party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380. But if record evidence clearly contradicts the opposing party's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This is particularly true when there is video evidence. When video evidence exists, the court will "view[] the facts in the light depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene.") (cleaned up); *Carnaby v.*

*City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court . . . need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.") (cleaned up). The "court will not adopt facts that are clearly contradicted by the video." *Waddleton*, 750 F. App'x at 254 (citing *Scott*, 550 U.S. at 378). In addition, the court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

    **C.**    **Pleadings from Self-Represented Litigants**

Jackson-Boulet is representing himself, so the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

**III.**    **Discussion**

    **A.**    **Exhaustion**

Officer Curtis first contends that Jackson-Boulet's action should be dismissed because he failed to exhaust his administrative remedies before filing this action. (Docket Entry No. 36, pp. 15-17). Jackson-Boulet responds that he exhausted all of the remedies that were available to him. (Docket Entry No. 41). Because the summary judgment evidence shows that Jackson-Boulet

exhausted the administrative remedies applicable to his situation, Officer Curtis is not entitled to summary judgment on this basis.

The facts concerning the processing of Jackson-Boulet's grievance are essentially undisputed. On December 2, 2019, Jackson-Boulet filed a grievance against Officer Curtis as a result of the events of November 27. (Docket Entry No. 36-5, p. 38). The Grievance Board initially investigated the grievance and, rather than resolving it, referred it to the Internal Affairs Division Bureau Commander for further investigation. (Docket Entry No. 36-6). Jackson-Boulet was advised of the referral to the Internal Affairs Division, and he did not appeal the Grievance Board's decision to refer the matter to the Internal Affairs Division for further investigation.

On February 11, 2020, the Internal Affairs Division administratively closed its investigation into Jackson-Boulet's grievance. (Docket Entry No. 36-6). The letter requesting administrative closure reports that Detention Officer Jacqueline Bertram met with Jackson-Boulet on January 31, 2020, and told him that the Internal Affairs Division would not further investigate his grievance due to the pending criminal charge against him arising from the incident with Officer Curtis.[2] (*Id.*). Officer Bertram told Jackson-Boulet that he could refile his grievance when the criminal case was resolved if he still wanted to pursue the matter. (*Id.*). Nothing in the record shows that Jackson-Boulet was provided with either a copy of the administrative closure letter or any formal notice of the resolution of the Internal Affairs Division's investigation into his grievance, nor does it appear that Jackson-Boulet was told of any avenue through which he could appeal the Internal Affairs Division's decision.

---

[2] The State charged Jackson-Boulet with assault on a public servant in Harris County Cause Number 1655004 as a result of the incident involving Officer Curtis. This charge was later dismissed. *See* Harris County District Clerk, https://www.hcdistrictclerk.com (last visited Aug. 23, 2023).

The Prison Litigation Reform Act bars an inmate's action under § 1983 concerning "prison conditions" until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has broadly interpreted the phrase "prison conditions" to include all types of constitutional claims, including allegations of the use of excessive force. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Exhaustion of administrative remedies is mandatory, regardless of the forms of relief sought or offered through administrative avenues, *Porter,* 534 U.S. at 524, and "a court may not excuse a failure to exhaust" regardless of the circumstances. *Ross v. Blake*, 578 U.S. 632, 639 (2016). If an inmate does not exhaust his administrative remedies before filing suit, his claims must be dismissed. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

In support of his motion for summary judgment, Officer Curtis filed a copy of the Harris County Jail Inmate Handbook. (Docket Entry No. 36-1). The Inmate Handbook sets out the available Harris County Jail grievance procedures as follows:

> **Grievance Procedure**
>
> 1. You may file a grievance if you are subjected to any of the following:
>
>    a. A violation of Civil Rights
>    b. A criminal act
>    c. An unjust denial or restriction of inmate privileges
>    d. A prohibited act by any Staff Member
>
> 2. Notify any staff member on duty if your grievance is an emergency in which delay could subject you to personal injury, property damage, or property loss.
>
> 3. If you have an issue, you are first required to try to resolve it with the Detention Officer, Deputy, or Staff Member on duty.

      a. If the issue is not resolved, you should request to speak with the Floor Supervisor in an effort to resolve the issue.

      b. If these attempts are exhausted without a resolution, you may then file a grievance.

4.    Filing a Grievance:

      A Grievance:

      a. Is a written statement by you on a grievance form or any piece of paper.

      b. Fully and truthfully explains the incident that occurred.

      c. Gives the date, time, and location of the incident.

      d. Includes the names of any Detention Officers, Deputies, Staff Members, or inmates who were involved or were witnesses.

5.    Submitting your Grievance:

      a. Put the grievance in the grievance box, interdepartmental mail, or the U.S. Mail.

      b. Grievance boxes are in various locations throughout every floor and are accessible to all inmates.

6.    Investigation of Grievances

      a. Investigations are conducted by an assigned supervisor not involved in the grievance.

      b. Grievances in which the investigating supervisor has determined "unresolved" will proceed to the Grievance Board for a Grievance Hearing.

7.    Grievance Hearing:

      a. The Grievance Board will conduct a hearing with you, unless cause can be shown where it would present a hazard to institutional safety and/or correctional goals.

      b. Possible resolutions from this hearing are:
        1. Resolved

>    2. Sustained
>    3. Unfounded
>    4. Forwarded to the Bureau Commander for further investigation. You will be notified, in writing, of the Grievance Board's decision within fifteen (15) working days (excluding holidays).
>
>    c. If you disagree with the decision of the Grievance Board, you may appeal to the Division Commander of Administrative Services.
>
>    d. All appeals <u>must</u> be in writing and submitted within five (5) working days of the Grievance Board's decision (excluding holidays).

(Docket Entry No. 36-1, pp. 6-7). These procedures do not provide a method for appealing a decision of the Internal Affairs Division after a grievance has been referred to it by the Grievance Board.

In his motion for summary judgment, Officer Curtis alleges that Jackson-Boulet failed to exhaust his administrative remedies because he did not appeal the Grievance Board's decision to refer his grievance to the Internal Affairs Division for further investigation. (Docket Entry No. 36, p. 16). But at that time, there was no final decision for Jackson-Boulet to appeal. And while the Internal Affairs Division arguably made a final decision on Jackson-Boulet's grievance in January 2020, the Inmate Handbook does not provide a procedure for appealing a final decision of the Internal Affairs Division. Jackson-Boulet cannot be said to have failed to exhaust his administrative remedies when none exist for the type of situation he faced.

Because the summary judgment evidence does not show Jackson-Boulet failed to exhaust the available administrative remedies that applied to the processing of his grievance, Officer Curtis's motion for summary judgment on the basis of exhaustion is denied.

### B. The Claim Against Officer Curtis

#### 1. The Claim of Excessive Force

Jackson-Boulet alleges that Officer Curtis violated his constitutional rights by using excessive force against Jackson-Boulet while he was trying to get his medications from the nurse. Officer Curtis contends that the force used was not excessive under the circumstances.

Pretrial detainees like Jackson-Boulet have a Fourteenth Amendment right to be free from the use of excessive force. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). "Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable." *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 362-63 (5th Cir. 2022) (citing *Kingsley*, 576 U.S. at 396-97). Objective reasonableness "turns on the 'facts and circumstances of each particular case,'" and the court must consider objective reasonableness from the perspective of a reasonable officer on the scene. *Kingsley,* 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Factors relevant to the reasonableness of force include "the relationship between the need for force and amount of force used; the extent of the plaintiff's injury; any effort made to temper or limit the amount of force; the severity of the security problem at issue; the threat perceived by the officer; and whether the plaintiff was actively resisting." *Id.* The court must also consider the legitimate governmental interests in managing the facility and the policies and practices that, in the jail officials' judgment, are necessary to preserve internal order and discipline and to maintain institutional security. *Id.* (citing *Bell v. Wolfish*, 411 U.S. 520, 540, 547 (1979)). Because of this, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The Constitution does not recognize minimal uses of force that do not rise to a level

12

"repugnant to the conscience of mankind." *Id.* at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

In support of his motion for summary judgment, Officer Curtis offers the grievance records, the use-of-force investigation report, and the video of the events. That evidence shows that Jackson-Boulet created a security threat at the Jail by thrusting his arm through the tray slot in the dayroom door while the nurse was trying to distribute medications. This act posed a threat to both Officer Curtis and the nurse, as well as to the orderly distribution of medications to other inmates. Officer Curtis attempted to resolve the threat by ordering Jackson-Boulet to step back from the door. Only when Jackson-Boulet refused to comply with this order did Officer Curtis grasp Jackson-Boulet's arm to secure him. When back-up officers arrived at the scene, Jackson-Boulet continued to resist, struggling against the officers and punching and kicking them as they tried to secure his legs. The officers then used the force necessary to secure Jackson-Boulet and resolve the security threat. As a result of the force, Jackson-Boulet suffered bruises to his arm and a swollen knee, all of which resolved with no medical treatment other than ibuprofen. This summary judgment evidence shows that Officer Curtis's use of force to gain Jackson-Boulet's compliance was objectively reasonable in light of all of the circumstances.

In his response to Officer Curtis's motion, Jackson-Boulet does not dispute that he refused to comply with Officer Curtis's instructions. Instead, he asserts that the instructions were unnecessary because he was wearing pants and he simply wanted to obtain his medications. Jackson-Boulet also denies that he ever "hit or assaulted Officer Curtis." (Docket Entry No. 7, p. 10). But "[o]fficers may consider a [person]'s refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the [person]'s compliance." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167

13

(5th Cir. 2009)). And the summary judgment evidence shows that Officer Curtis used force only after Jackson-Boulet refused to step back from the dayroom door and after he physically resisted the officers' attempts to obtain his compliance. In addition, the video evidence contradicts Jackson-Boulet's assertion that he did not hit or assault Officer Curtis, and the court will not credit unsworn allegations that are contradicted by the video evidence. Jackson-Boulet's unsupported description of the force used as excessive is insufficient to avoid entry of summary judgment.

Jackson-Boulet has failed to carry his burden to demonstrate that factual disputes exist material to the issue of whether Officer Curtis's use of force was objectively reasonable. Because the summary judgment evidence shows that the force used was objectively reasonable under the circumstances, Officer Curtis is entitled to summary judgment in his favor on this basis. Jackson-Boulet's excessive force claim against him is dismissed, with prejudice.

### 2. The Defense of Qualified Immunity

Even if there was some evidentiary basis upon which to conclude that Officer Curtis used constitutionally excessive force, he would be entitled to summary judgment under the doctrine of qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). A right is clearly established when the existence of the right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (cleaned up); *see also Morgan v. Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (en banc). Qualified immunity is intended to protect officers who "reasonably but mistakenly" violate a plaintiff's constitutional rights, *see Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007) (quoting *Goodson v. City of Corpus Christi*,

202 F.3d 730, 736 (5th Cir. 2000)), and it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

When a government official moves for summary judgment based on qualified immunity, "'the burden . . . shifts to the plaintiff, who must rebut the defense by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law.'" *Dyer*, 964 F.3d at 380 (alteration in original) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux,* 402 F.3d at 540 (quoting *Little,* 37 F.3d at 1075). Instead, the nonmoving party must identify specific evidence in the record and explain how that evidence supports that party's claim. *See Willis v. Cleo Corp.,* 749 F.3d 314, 317 (5th Cir. 2014). The court has no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quoting *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998)).

Jackson-Boulet does not meet his burden. The video evidence shows that Officer Curtis grabbed Jackson-Boulet's arm after he thrust it through the tray slot, held it until back-up officers arrived, and then punched Jackson-Boulet only after Jackson-Boulet began hitting and kicking the officers. The video evidence does not support a determination that Officer Curtis used force excessive to the need. And even if the court were to view the punches as unnecessary, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" constitutes excessive force. *Hudson*, 503 U.S. at 9 (quoting *Johnson*, 481 F.2d at 1033).

In addition, the record evidence does not show that Jackson-Boulet suffered anything more than minor cuts and bruising as a result of the incident. While an excessive force claim does not

15

require proof of an injury that is "significant, serious, or more than minor," *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999), any injury must result from a use of force that is "repugnant to the conscious of mankind." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (quoting *Hudson*, 503 U.S. at 10). The events depicted in the video evidence do not support a conclusion that Officer Curtis's use of force was repugnant to the conscious of mankind, and Jackson-Boulet's resulting minor injuries do not support a determination that the force used was constitutionally excessive.

Jackson-Boulet has failed to carry his burden to show that factual disputes exist material to the question of whether Officer Curtis violated clearly established law, and Jackson-Boulet's unsupported assertions that the punches were unnecessary and constitutionally excessive are insufficient. Officer Curtis is entitled to qualified immunity, and Jackson-Boulet's excessive force claim against him is dismissed, with prejudice.

### C. The Claim for Failure to Investigate Grievances

In addition to his claims against Officer Curtis, Jackson-Boulet also alleges that his grievance about the November 27 incident was not properly and fully investigated. (Docket Entry No. 7, pp. 7-8). He alleges that the Grievance Board referred the grievance to the Internal Affairs Division, but that the Division refused to investigate because of the pending criminal charge. (*Id.*). Even if this allegation is true, it does not state a claim for which relief can be granted because inmates do not have a constitutional right to have their grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (inmates do not have a federally protected interest in having their grievances resolved to their satisfaction). To the extent that Jackson-Boulet's complaint can be construed to seek relief on this basis, he does not state a claim upon which relief can be granted, and the claim is dismissed with prejudice.

## IV.     Conclusion and Order

The motion for summary judgment filed by Officer Sheldon Curtis, (Docket Entry No. 36), is granted.  This action is dismissed with prejudice.  Any pending motions are denied as moot.  Final judgment will be separately entered.

SIGNED on September 1, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge